RALPH M. PHILLIPS, ESQ. (SBN 64481)
DANIEL R. BARTH, ESQ. (SBN 274009)
**LEVY PHILLIPS, APC**
20700 Ventura Blvd., Suite 320
Woodland Hills, CA  91364
Telephone: (818) 797-5777
Facsimile: (818) 797-5794
Email: rmp@levyphillipslaborlaw.com
         dbarth@levyphillipslaborlaw.com

Attorneys for Plaintiff/Petitioner,
NABET-CWA, Local 53

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES AND TECHNICIANS, THE BROADCASTING AND CABLE TELEVISION WORKERS SECTOR OF THE COMMUNICATIONS WORKERS OF AMERICA, LOCAL 53, AFL-CIO-CLC<br><br>         Plaintiff/Petitioner,<br><br>         v.<br><br>KMEX-TV, AN UNINCORPORATED DIVISION OF UNIVISION TELEVISION GROUP, INC.<br><br>         Defendant/Respondent. | CASE NO.: 2:21-cv-03452<br><br>**COMPLAINT AND PETITION TO COMPEL ARBITRATION** |

Plaintiff/Petitioner National Association of Broadcast Employees and Technicians, the Broadcasting and Cable Television Workers Sector of the Communications Workers of America, Local 53, AFL-CIO-CLC ("Petitioner" or "Union") alleges as follows:

1. This is an action for an order compelling arbitration pursuant to the terms of a collective bargaining agreement between Petitioner and the Defendant/Respondent KMEX-TV, an unincorporated division of Univision Television Group, Inc. ("Respondent" or "KMEX").

## PARTIES

2. Petitioner is a labor organization representing employees in industries affecting commerce within the meaning of Section 301 of the Labor Management Relations Act ("LMRA") [29 U.S.C. § 185], and as defined under 29 U.S.C. §§ 142(3) and 152(5). Through its duly authorized officers and agents, Petitioner represents employees in Southern California, including in the Central District of California, for purposes of collective bargaining regarding their wages, hours and other terms and conditions of employment.

3. Respondent is a commercial television station broadcasting in the Spanish language located in Los Angeles, California and, at all material times, has been an employer within the meaning of Section 301 of the LMRA, and as defined under 29 U.S.C §§ 142(3) and 152(2). Respondent is an unincorporated division of Univision Television Group, Inc. ("Univision"), a Delaware corporation, and exists and does business in the Central District of California. Respondent employs members of Petitioner in Los Angeles, California. Respondent's operations affect interstate commerce within the meaning of 29 U.S.C. §§ 142(1), 152(6), 152(7) and 185(a).

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court by Section 301(c) of the LMRA, 29 U.S.C. § 185(c); 28 U.S.C. §1331; and 28 U.S.C. §1337(a).

5. Venue is proper in this District under Sections 301(a) of the LMRA, 29 U.S.C. § 185(a); and 28 U.S.C §§ 1391(b) and (d).

## FOUNDATIONAL ALLEGATIONS

6. Petitioner and Respondent have been parties to multiple successive collective bargaining agreements ("CBAs") for many years. The current CBA has an effective date of 2016 to 2020 ("2016 CBA") and has been extended until the parties agree upon a successor CBA which is currently being negotiated. The previous CBA had an effective date of 2012 to 2016 ("2012 CBA") (hereinafter the 2016 CBA and 2012 CBA are referred to collectively as the "CBAs"). The CBAs govern the employment of various classifications of employees in Respondent's Los Angeles, California office. A true and correct copy of the 2016 CBA is attached hereto as Exhibit 1. A true and correct copy of relevant excerpts of the 2012 CBA are attached hereto as Exhibit 2.

7. Article X of both CBAs establishes binding procedures for the presentation, adjustment and arbitration of grievances. Specifically, Article X, Section 10.01 provides: "In the event any dispute or grievance shall arise concerning the interpretation or application of this Agreement, the issue shall be resolved" in accordance with the procedures set forth in Article X, including final and binding arbitration for any grievances referred to arbitration. Ex. 1, pp. 36-37; Ex. 2, pp. 103-104.

8. The CBAs contain broad job security provisions which prohibit subcontracting and other transfers of covered work to non-union employees. Article

VI, Section 6.01 provides that, subject to limited exceptions, "only employees covered by the Agreement shall perform work covered by the Agreement." Article VI, Section 6.07 lists specific functions that may be performed only by bargaining unit employees, including "live to air master control switching." Ex. 1, pp. 14, 25; Ex. 2, pp. 93, 94.

9. Article XII, Section 12.01 of the CBAs limits Respondent's right to terminate employees only for "cause." Ex. 1, p. 43; Ex. 2, p. 108.

10. Article XX of the CBAs contains provisions pertaining to layoffs, including the order of layoffs, seniority rights and re-hire rights for laid off employees. Ex. 1, pp. 61-65; Ex. 2, pp. 109-113.

11. In 2014, Respondent transferred certain work covered by the CBA – known as "Master Control" work – to a non-union "hub" in Houston operated by Respondent's parent corporation, Univision. As a consequence of this transfer of work, all of Respondent's regular, full-time Master Control Technical Directors (MCTDs) were reassigned to other positions then-occupied by "*per diem* employees" (those hired on a day-to-day basis), resulting in the displacement of these *per diem* employees.

12. On November 6, 2014, Petitioner filed a grievance (Grievance No. KMEX 14-04) challenging the transfer of Master Control work to the Univision "hub" and thereafter referred it to arbitration pursuant to Article X of the CBA. The arbitration was heard by Impartial Arbitrator Kenneth A. Perea over five (5) days in 2015 and 2016.

13. On December 3, 2016, Arbitrator Perea issued an arbitration award ("Award") in favor of Petitioner, a true and correct copy of which is attached hereto as Exhibit 3. In the Award, Arbitrator Perea held that Respondent violated Article VI, Section 6.01(c) of the CBA by transferring Master Control work to Univision's Houston "hub" and ordered Respondent to restore the *status quo ante* by returning

the Master Control work to Respondent's Los Angeles facilities. Arbitrator Perea remanded implementation of the remedy to the parties with instructions that the parties also consider the "appropriate remedy regarding the Employer's discontinued use of per diem employees . . . ." Ex. 3, p. 141.

14.  Shortly after the issuance of the Award, Respondent filed a motion for re-consideration with Arbitrator Perea. On February 22, 2017, Arbitrator Perea issued a Supplemental Award denying Respondent's motion and re-issuing the same remedy. A true and correct copy of the Supplemental Award is attached hereto as Exhibit 4.

15.  Thereafter, consistent with Arbitrator Perea's order of remand, the parties commenced negotiations concerning the appropriate remedy. On or about September 15, 2017, the parties entered into a settlement agreement ("Settlement Agreement") regarding the remedy. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 5.

16.  In negotiating the Settlement Agreement, Respondent's overriding objective was to obtain the right to continue using its non-union employees at the Houston "hub" to perform Master Control work. Respondent was willing to, and did, make substantial concessions to Petitioner to secure this right. The Settlement Agreement reflects this bargain. Petitioner granted Respondent the right to continue using the Houston "hub" to perform Master Control work. In exchange, Respondent agreed to numerous far-reaching promises concerning the employment rights and job security of bargaining unit employees. One such promise was that Respondent would permanently add five (5) new full-time staff positions to the bargaining unit: one Tech Operator, one Assignment News Editor, one News Coordinator, one morning Producer and one mid-day Producer.

17. Following the execution of the Settlement Agreement, Respondent hired five (5) new staff employees as required by the Agreement. One of them was Thomas Perezgallo ("Perezgallo") who was hired as a Tech Operator.

18. Perezgallo remained employed by Respondent until May 15, 2020. On that date, Respondent laid off Perezgallo in violation of the Settlement Agreement. On or about December 15, 2020, Petitioner filed a grievance, denominated KMEX 20-06 ("Grievance"), alleging that Respondent breached the Settlement Agreement by laying off Perezgallo. A true and correct copy of the Grievance is attached hereto as Exhibit 6.

19. In or about January 2021, Petitioner referred the Grievance to arbitration in accordance with Article X of the CBA. However, Respondent has refused to arbitrate the Grievance on the asserted grounds that the Settlement Agreement does not expressly incorporate the CBA's grievance and arbitration procedure. Respondent's refusal to arbitrate the Grievance is reflected in email communications between Respondent's counsel Angel Ortiz ("Ortiz") and Petitioner's President Steve Ross, dated January 12, 2021; and in a subsequent email exchange between Ortiz and Petitioner's counsel, Ralph Phillips ("Phillips"), dated April 1, 2021. A true and correct copy of the foregoing correspondence is attached hereto as Exhibits 7 and 8, respectively.

**CLAIM FOR RELIEF – ORDER COMPELLING ARBITRATION**

20. Petitioner incorporates by reference the allegations contained in Paragraphs 1 to 19, above.

21. Petitioner and Respondent entered into a valid, binding and unconditional Settlement Agreement to implement the remedy ordered by Arbitrator Perea in his Award and Supplemental Award.

22. The Settlement Agreement required Respondent to, *inter alia,* permanently hire a Tech Operator. Respondent breached the Settlement Agreement by laying off the Tech Operator (Thomas Perezgallo) hired pursuant to the Agreement.

23. The United States Supreme Court has held that "where a contract contains an arbitration clause, there is a presumption of arbitrability" and that an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies v. Communications Workers of America,* 475 U.S. 643, 650 (1986) (internal quotations and citations omitted). The presumption of arbitration is "particularly potent if the arbitration clause is broad." *Dennis L. Christensen Gen'l Bldg. Contractor v. Southern Calif. Conf. of Carpenters,* 952 F.2d 1073, 1077 (9th Cir. 1991).

24. Ninth Circuit precedent holds that "a collective bargaining agreement is not limited solely to the specific provisions of the basic labor contract formally executed by the parties, but it may also include, among other things, written side agreements . . . entered into by the parties to the collective bargaining relationship, including **settlement agreements**." *Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d 1075, 1079 (9th Cir. 2002) (emphasis added), overruled on other grounds by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

25. The Ninth Circuit has also held that disputes arising under settlement agreements "must be arbitrated if the dispute relates to a subject that is within the scope of the CBA's arbitration clause." *Dutra*, 279 F.3d 1080. Thus, an arbitration clause "will apply to a dispute over a [settlement] agreement to the same extent that it would govern any other disagreement between the parties." *Id.* at 1081.

26. The 2016 CBA has a broad arbitration clause that covers "any dispute or grievance . . . concerning the interpretation or application of [the CBA]." Ex. 1, p. 36. The Settlement Agreement draws its essence from subjects contained in the CBA – job security, employment rights, lay off rights, *etc.* – and is itself part of the CBA. *See Dutra* 279 F.3d at 1079. The Grievance raises a dispute concerning the interpretation and application of the Settlement Agreement and, by extension, the CBA (*e.g.,* whether the layoff of Perezgallo was permissible). Therefore, the Grievance is covered by the CBA's arbitration clause.

27. At all relevant times, Petitioner has complied with all terms of the parties' CBAs and with the terms of the Settlement Agreement. Respondent has failed to comply with the CBA's grievance and arbitration procedure by refusing to submit the Grievance for resolution pursuant to said grievance and arbitration procedure. Petitioner accordingly requests an order compelling Respondent to submit the Grievance to arbitration.

28. Petitioner has been required to expend funds for counsel to prosecute this action. Respondent's unilateral refusal to comply with the clear and express arbitration provisions of the CBA has been in bad faith and without justification, entitling Petitioner to an award of reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays as follows:

1. For an Order compelling Respondent to arbitrate the Grievance pursuant to the grievance and arbitration procedure in the parties' collective bargaining agreement;

2. For reasonable attorneys' fees incurred by Petitioner in prosecuting this action;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems just and proper.

Dated: April 22, 2021

Respectfully submitted,

**LEVY PHILLIPS, APC**

By: /s/ Daniel R. Barth
Ralph M. Phillips, Esq.
Daniel R. Barth, Esq.
Attorneys for Plaintiff/Petitioner,
National Association of Broadcast
Employees and Technicians,
the Broadcasting and Cable
Television Workers Sector of the
Communications Workers of
America, Local 53, AFL-CIO-CLC